May it please the court. Good morning, my name is Jennifer Dorsey and I represent the appellants Wanda Fisher and Scott Fisher. Wanda Fisher sustained serious cardiac injuries from taking the diet drug Fen-Phen, half of which, the fenfluramine half, was manufactured by the appellee Alfa Chemicals Italiana. This case comes before this court after two independent reversible jurisdictional errors in the United States District Court for the District of Nevada. The first of those reversible errors was the district court's refusal to remand this case back to the Nevada State Court despite the removing party's failure to explain in the notice of removal why all the defendants had not joined in the removal. This court must reverse that order and remand this case back to the Nevada State Court because under the clear law of this circuit, the failure to explain in a removal petition, the lack of unanimity requires remand. The second reversible error is the district court's entry of summary judgment upon finding the Nevada lacks personal jurisdiction over Alfa, an Italian company. Should this court find removal jurisdiction in this case despite the removing defendants' fatally inadequate notice of removal, the district court's order granting summary judgment must be reversed because traditional notions of fair play and substantial justice require that the FDA-approved drugs in the United States must be held accountable and subject to suit in the home state of a consumer who is injured as a result of taking those drugs. I will address the remand issue first, because had the district court properly remanded this case when the motion for remand was filed, the district court never would have gotten to the personal jurisdiction issue. And so ---- You're correct, Your Honor. However, that's not the case in this case. In this case, the district court is not required to go and get the consent of other defendants who may or may not be served in this case. You don't have anybody else who's been properly served in the case. There really isn't anybody that the court can exercise jurisdiction over at that time. You're correct, Your Honor. However, that's not the case in this case. Now, specifically, my argument. My argument is that PCCA, the removing defendant, failed in its notice of removal to follow the law of this circuit. And the law of this circuit, which is stated in the prize versus matrix case, matrix case, is that if you have unserved defendants who obviously aren't going to join or consent to a removal because we don't even know who they're represented by at that point, but that's okay, because there's an exception to the unanimity requirement, and that is if you put in the notice of removal the fact that these defendants have yet to be served, then you satisfy that, and you get to remove that court to the Federal court. So all of this is going to turn on the technicality that they failed to note that nobody else had been served. That's exactly what it turns on. And this ---- Is there any doubt in the record that no one else had been served? There is no indication in the record either way. What policy is served by that? I mean, the whole rule of unanimity is all court created anyway. It's not found in the removal rule. So we're just making it all up as we go along. So why is all of a sudden this ---- why is this critical? Who is this critical to? Was your client harmed? Well, it's critical because the rules of the court, because Section 1446, the promotion of the statute of limits removal, is statutorily created. And the United States Supreme Court, this Court repeatedly, has said that those statutes must be strictly construed in favor of the strong presumption of State jurisdiction, State court jurisdiction. So this is a court of limited jurisdiction. The State court is a court of more general jurisdiction. And so the presumption, in fact, the strong presumption, is always State court jurisdiction. My clients filed in the State court. They live in Nevada. It is in their best interest to have the State court of Nevada, who is specifically concerned I understand all that, counsel. The question here is whether they were required to state, you said that the failure here was the failure to state that nobody else had been served. Okay? That was not going to come as a surprise to your clients, right? Correct. Right? Because you controlled that. So you knew this fact. So how were you prejudiced by their failure to say, to add one sentence to the removal where it says, no other defendants have been served yet in this case? I understand you want to be really strict about it, but I'm trying to figure out why. Because that's what the law requires, Your Honor, quite simply. What would the district court do? Was there any confusion in the district court as to whether or not anybody else had been served? No, Your Honor. There was no discussion at all at that point about anyone being confused or uncertain of what had happened. Did you raise a timely objection to that failure? Yes, Your Honor. That was discussed in the motion to remand, and there was a also a motion for reconsideration of the failure to remand. So this was briefed previously in that. So what we're appealing from here is what? We're appealing from two different things, Your Honor. First, this Court – this case was resolved against Alpha or as to Alpha by summary judgment. So summary judgment was entered in favor of Alpha, and that was the appealable order that brings us here. Right. Also, we've appealed from the failure to grant remand in light of the inadequate notice of removal. And I appreciate your statements about who is harmed and what is the policy behind this, but the policy behind this has been repeatedly addressed. It was addressed in the Abrego case from this time. Let me make sure I understand this, because I may be missing something. Certainly. When the district court ordered a dismissal for lack of personal jurisdiction, did that resolve everything in the case? No, it didn't resolve the entire case. I mean, was there any other parties that were left? Was that a final order with respect to the court? It was a final order, Your Honor, because we've resolved outside of court with respect to other defendants. Okay. Was it a final order on the merits? It was a dismissal based purely on the lack of jurisdiction, personal jurisdiction. It was not on the merits. It was not on the merits. Correct. It was a summary judgment, so there were – But it was final. It was final. Counsel, I've got a number of questions on jurisdiction. You may want to – since you've got limited time, you may want to turn to that. Absolutely, Your Honor. Again, it is our position that remand should have been granted, and because remand was not granted, the district court was able to get to this personal jurisdiction issue. And we think, if anything, that this should have been an issue resolved by the Nevada State court. But the district court summarily held that Nevada did not have specific personal jurisdiction over Alpha, an Italian company. No findings of fact were entered. It's a single-paragraph decision, essentially, that the district court handed down on this issue. And the court simplistically concluded, I'll quote it for you, "...even accepting as true plaintiff's theory that Alpha purposefully directed its fenfluramine to the United States, plaintiff's claims arise out of Alpha's activities in Utah, not Nevada, because the fenfluramine was ingested was shipped to Utah." Is it clear that the Fen-Phen that the Ms. Fisher took was also being sold in Nevada at this time? Yes, Your Honor. That was sold in two different pharmacies. It was sold in the Fallon pharmacy. Was it sold in identical form? Who was doing the compounding? The compounding – well, the way it works is it's sort of this community. Was the compounding done by the pharmacy in Utah? Yes. Some was done by the pharmacy in Utah. That's the Fen-Phen that she took. It was also being – the fenfluramine – So the compounding was done in Utah and that product would not have necessarily been sold in Nevada? Well, the way that this compounding worked was essentially there's a gel cap. And so you take the fenfluramine and you take the fentermine, you mix the powders together and put them inside just a little capsule. So this isn't your typical drug manufacturing process where it's compacted into a pill form and then sent out all over the place. The two halves of it – But the physical compounding was actually done in Utah? In the pharmacy. Right. So it was not done someplace else at some lab in New Jersey and then shipped to Nevada and Utah so that she took pills that would have been identical to those in Nevada. But her identical fenfluramine was also shipped to Nevada to two different pharmacies there where it was compounded just like it was in the Utah pharmacy. The main problem with the district court's – Counsel, let me ask this. What evidence is there that Alpha knew that its product was coming to the United States to be sold in retail? As I understand it, the contention is that Alpha knew its product was coming to the United States. It was shipping it to the United States quite deliberately, but only for research and development purposes and not for commercial consumption. What evidence is there that Alpha knew that its product was entering the commercial stream and that it was likely to end up in Nevada or Utah? There are two answers to that. The first, we can focus on the fact that Alpha had distributorship agreements with three separate distributors. And the jurisdiction or the territory of those three distributorships was the entire United States. And the contracts show that what Alpha wanted was for those distributors to promote and market its drugs, all 22 of the drugs that it sold in the United States with FDA approval. It wanted all of those to be marketed throughout all 50 states and the territories. Thank you. You're now in the red. Oh, I'm sorry. No. We helped you. Thank you. Thank you. Good morning, Your Honors. Robert McCoy for Appellee Alpha Chemicals Italiana. There's no doubt that there's subject matter jurisdiction over this case. When the notice of removal was filed on September 5th, 2001, no other defendant had been served. And the record on that issue is completely clear, and it's the Supplemental Excerpts of Records, pages 1 through 11. There's two motions filed by the Fishers for an extension to serve two of the defendants, my client, Alpha, and another defendant, Sagarin, who was never served. Among those excerpts of record are also two declarations from the other two defendants' representatives, HBS and CPS, stating that they had not been served as of the date of removal. Any technical defect in the notice of removal that was prepared by PCCA, the only served defendant, was a procedural defect and not a jurisdictional one. And it was cured when all the other defendants consented to removal. And at the time, the district court entered the summary judgment order dismissing Alpha for lack of personal jurisdiction, there was no doubt that there was complete diversity in proper subject matter jurisdiction. There is, however, no personal jurisdiction over Alpha for this reason. Alpha never purposely availed itself of the privilege of conducting business in Nevada by delivering fenfluramine to Nevada. The fenfluramine issue in this case was sold by Alpha in Italy to an Italian trader named Gino Masica. Alpha, the record reflects, made all efforts to ensure that that fenfluramine could not reach the United States for consumer use because it was not yet approved by the FDA for consumer use in the United States. And so Alpha withheld, as part of its sale to Masica's company, Top Kim, key documents that would have allowed him to import that fenfluramine into the United States. Despite that, Masica sold at least some of that fenfluramine to PCCA, who enlisted two other California companies to import the fenfluramine through Los Angeles to Texas, where it left Texas and was delivered to Utah, where this point... There's no question that Masica was selling this product in Nevada, is that right? For the Masica's control... Masica's companies were selling in Nevada and Utah. That's correct, Your Honor. Your Honor, Masica... The fenfluramine that Masica imported through PCCA went to Utah and some apparently went to a pharmacy in Fallon, Nevada. Okay. But this had to be... But not in Las Vegas? Not in Mesquite? There's nothing in the record to reflect as much, Your Honor. Okay. So this was not being... Masica was not compounding this product, is that right? That's correct, Your Honor. Nor was PCCA. The product at issue in this case, the fenfluramine, was compounded by the end-user pharmacy. So when this plaintiff, Wanda Fisher, received a prescription from her OB-GYN, she took it to the pharmacist who then at that moment, upon presentation of the prescription, compounded it for her and such was the case. PCCA is Professional Compounding Centers of America. They had a network of pharmacies that did exactly this and the pharmacy in Provo, Utah, was one of its network. Okay. The pharmacy was sued and is settled out, is that correct? The pharmacy was not sued. The pharmacy was not sued? It was not. PCCA, the importer, was sued, as were the two entities in California that PCCA enlisted to help it import the drug. PCCA had to enlist other entities to help it import the drug because it was under an FDA embargo that prevented it from importing any foreign bulk pharmaceuticals because it did use pharmaceuticals marked for research and development only, which meant they were not for consumer use and not approved for consumer use. They had marketed those for consumer use and that's exactly what happened in this case. They marked this fenfluramine that was sold to an Italian for use elsewhere because this fenfluramine was approved for use in nearly every other country in the world for consumer use. They marked it for research and development only to get it past the FDA embargo. Counsel, they were shipping substantial amounts of fenfluramine to Masico or to his companies. Of the amounts that were being shipped, is there any possibility that those amounts could  have been used for R&D purposes? We're shipping unusual quantities of fenfluramine for R&D. And as I understand, the claim is Alpha could not have been, could not have not known that this was being used for consumption because there are quantities that far exceeded what would have been used for R&D purposes. Alpha knew the fenfluramine that it was delivering to Masico in Italy was ultimately bound for consumer use, but it was bound for consumer use outside the United States. The United States was the only jurisdiction that the record reflects this fenfluramine was not yet approved for use in. So there's no doubt that that fenfluramine was intended for consumer use, but it was not intended for consumer use in the United States and Alpha specifically withheld documents so that Masico could not import it into the United States. And the record reflects that Alpha had no knowledge that Masico was attempting to or intended to import it into the United States. The testimony of Claudio Crimonisi, who's Alpha's Chief of Regulatory Affairs and Quality Assurance, clearly stated as much. Because Alpha did not allow this fenfluramine to be sold in the United States, Alpha cannot be found to have purposely availed it of the jurisdiction of doing business in Nevada because allowing a product into the stream of commerce alone is not a sufficient basis on which to exercise personal jurisdiction. This Court has consistently held that purposeful availment requires a stream of commerce plus an intentional direction of the product into the forum state and that we don't have here because Alpha specifically tried to keep it out of the United States. The Fishers jurisdictional claim also fails because Mrs. Fishers' fenfluramine consumption was not a product of Alpha delivering any of Alpha's contacts with Nevada. In fact, the but-for test fails because Mrs. Fishers' consumption was related only to Utah. She took the drug in Utah, she was prescribed the drug in Utah by a Utah physician and she took almost 90 tablets. The record reflects that maybe two or three of the 90 tablets that were prescribed to her were not taken. That was entirely in Utah with the exception of perhaps two days. There's no relationship between that prescription and Nevada. What if Mesique had been doing the compounding himself and so that the final product that lands in Utah doesn't have to be recompounded by a pharmacist? It comes in final form much like you get Tylenol or Advil. Now, if that product were being shipped to Utah and to Nevada, would you have the same jurisdictional argument? We would not, Your Honor, and it would be the Worldwide Volkswagen case because Mesique's unilateral act in importing this product without Alpha's knowledge is not a sufficient basis on which to establish jurisdiction. As an Alpha reaching out to the forum and attempting itself to sell the product there, it's the equivalent of in Worldwide's Volkswagen, the automobile being involved in an accident in Oklahoma when it was purchased from an importer that only imported into New Jersey and New York. It was the unilateral act of another, a distributor, and then a consumer that brought it to Utah and then ultimately Nevada. So if the same product were being sold in Nevada that she purchased and took in Utah, then you admit that there would likely be jurisdiction over your client in Nevada? I would, but there is no evidence in the record of this product being sold for consumer use with Alpha's knowledge and consent in Nevada or Utah or anywhere else in the United States. The record is clear that the amounts that Nevada shipped with the FDA's approval to the United States for research and development only were not the product that ultimately reached this consumer. There's no doubt that this product came in through Mesique through PCCA in violation of the FDA embargoes and contrary to Alpha's knowledge and intent. Jurisdiction will also be unreasonable in Nevada, Your Honors, because none of the transactions involved in this case occurred in Nevada. She took the drug in Utah and it was only her fortuitous move to Nevada after she completed taking the drug that leads to her attempt to establish jurisdiction there. And the Supreme Court's Colco case is instructive on that where they said, in a forum that is selected solely because the plaintiff moved there after the alleged injury occurred. And such is the case here. And that's why jurisdiction in Nevada is unreasonable. In short, Your Honors, none of the requirements for establishing specific personal jurisdiction over Alpha exists. And the fishers have waived any argument of general jurisdiction. There's no context in the record sufficient to support general jurisdiction. For these reasons, the district court's decision dismissing Alpha for lack of personal jurisdiction was correct and should be affirmed. Thank you. You have used your time. Are there any other questions of Ms. Dorsey? Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Powell v. DEF Press.
judges: Schroeder, Hall, Bybee